IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| EUGENE MARTINEZ, DAVID SILVA, § <br> MARIO OLIVAREZ, RUBY MARTINEZ, § <br> and SILVIA TREVINO, § <br>       Plaintiffs, § <br> § <br> § <br> § <br> vs. § <br> § <br> § <br> § <br> § <br> § <br> SUPERIOR HEALTHPLAN, INC. and § <br> CENTENE CORPORATION, § <br>       Defendants. § | CIVIL ACTION NO. 5:16-cv-00870 |

**PLAINTIFFS' SECOND AMENDED ORIGINAL COMPLAINT**

TO THE HONORABLE JUDGE OF SAID COURT:

NOW COME PLAINTIFFS EUGENE MARTINEZ ("E. Martinez"), DAVID SILVA ("Silva"), MARIO OLIVAREZ ("Olivarez"), RUBY MARTINEZ ("R. Martinez"), and SILVIA TREVINO ("Trevino") (collectively referred to as "Plaintiffs"), by and through their undersigned attorneys of record, and file this, their Second Amended Original Complaint against SUPERIOR HEALTHPLAN, INC. ("Superior") and CENTENE CORPORATION ("Centene") (collectively referred to as "Defendants"). For cause of action, Plaintiffs would show unto the Court the following:

## I.
## THE PARTIES

1. PLAINTIFF EUGENE MARTINEZ ("E. Martinez") is a Texas resident living at 11120 Buttercup, Adkins, Bexar County, Texas 78101.

2. PLAINTIFF DAVID SILVA ("Silva") is a Texas resident living at 11063 Moonlit

Park, San Antonio, Bexar County, Texas 78249.

3.     PLAINTIFF MARIO OLIVAREZ ("Olivarez") is a Texas resident living at 6629 White Wing Drive, Corpus Christi, Nueces County, Texas 78413.

4.     PLAINTIFF RUBY MARTINEZ ("R. Martinez") is a Texas resident living at 11524 Bear Paw Path, San Antonio, Bexar County, Texas 78245.

5.     PLAINTIFF SILVIA TREVINO ("Trevino") is a Texas resident living at 4450 Aspen Grove Drive, Corpus Christi, Nueces County, Texas 78413.

6.     DEFENDANT SUPERIOR HEALTHPLAN, INC. ("Superior") is a for-profit corporation engaged in interstate commerce in the State of Texas and may be served with summons on CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Superior is a wholly owned subsidiary of Centene.[1]

7.     DEFENDANT CENTENE CORPORATION ("Centene") is a for-profit corporation engaged in interstate commerce in the State of Texas and may be served with summons on CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136. Centene is a Fortune 500 and Fortune Global 500 Company with its national headquarters located at Centene Plaza, 7700 Forsyth Boulevard, St. Louis, Missouri 63105.[2]  Centene sells health plans through Medicaid to low income families, individuals with disabilities, and the elderly by supporting TANF (Temporary Assistance for Needy Families), CHIP (Children's Health Insurance Program), Foster Care, ABD, and Long-Term Care, Medicare Advantage Dual Eligible Special Needs Plans (D-SNPs) and Medicare-Medicaid Plan (MMP), and the Health

---

[1] See Docket Entry No. 5.
[2] See Exhibit 1, Centene Corporation Homepage, which is incorporated by reference into this Complaint as if fully set forth herein.

Insurance Marketplace.[3] Centene sells these various products in twenty-eight states in the United States of America.[4] In 2016, Centene generated approximately $46 billion in revenue, boasted 12.1 million members/customers, served two international markets, and employed 30,900 employees.[5] Centene's United States Securities and Exchange Commission Form 8-K filed October 23, 2017, including Mr. Edmund E. Kroll, Jr.'s, Senior Vice President, Finance & Investor Relations, press release, indicate that Centene has generated $11.8 billion dollars in revenue through the third quarter and has customers in Arizona, Arkansas, California, Florida, Georgia, Illinois, Indiana, Kansas, Louisiana, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Nebraska, Nevada, New Hampshire, New Mexico, Ohio, Oregon, South Carolina, Tennessee, Texas, Vermont, Washington, and Wisconsin.[6] On October 23, 2017, Centene's stock traded on the Nasdaq under the symbol "CNC" at $94.56 per share.[7]

8. At all relevant times hereto, Plaintiffs were employees of Defendants, as defined by and within the meaning of 29 U.S.C. § 203(e)(1).

9. At all relevant times hereto, Defendants were the employers of Plaintiffs, as defined by and within the meaning of 29 U.S.C. § 203(d).

10. Defendants employed Plaintiffs in commerce or in the production of goods for commerce, and had them handling, selling, or otherwise working on goods or materials that have

---

[3] See Exhibit 2, Centene Corporation What We Do Webpage, which is incorporated by reference into this Complaint as if fully set forth herein.
[4] See Exhibit 3, Centene Corporation 2017 Investor Day Brochure, which is incorporated by reference into this Complaint as if fully set forth herein.
[5] See Exhibit 3, Centene Corporation 2017 Investor Day Brochure, which is incorporated by reference into this Complaint as if fully set forth herein.
[6] See Exhibit 4, Centene Corporation United States Securities and Exchange Commission Form 8-K Brochure, which is incorporated by reference into this Complaint as if fully set forth herein.
[7] See Exhibit 5, Centene Corporation Stock Quote, which is incorporated by reference into this Complaint as if fully set forth herein.

been moved in or produced for commerce by any person.

11.     Centene, individually and as part of an enterprise entailing Superior, generated annual gross value of sales made or business done of not less than $500,000.00. In fact, Centene generated approximately $46 billion of revenue in calendar year 2016 and, as of the close of the third quarter of 2017, generated $11.8 billion of revenue.

12.     Defendants' business or businesses were organized under unified operation or common control, employed at least two persons engaged in commerce or the production of goods for commerce, and had annual gross sales of at least $500,000. In fact, Centene generated approximately $46 billion of revenue in calendar year 2016 and, as of the close of the third quarter of 2017, generated $11.8 billion of revenue.

13.     Centene and Superior jointly and severally employed Plaintiffs because they suffered or permitted Plaintiffs to work for them. Centene and Superior shared related and overlapping employment of Plaintiffs. Alternatively, Centene and Superior were the *alter ego* each of the other creating an economic dependence. Plaintiffs were, consequently, employees of both.

14.     Superior is a wholly owned subsidiary of Centene.[8]

## II.
## JURISDICTION

15.     Plaintiffs assert claims against Defendants pursuant to the Fair Labor Standards Act (hereinafter "FLSA"), the Employee Retirement Income Security Act ("ERISA"), and the Consolidated Omnibus Budget Reconciliation Act ("COBRA") thereby invoking the federal question jurisdiction conferred upon this Court pursuant to 28 U.S.C. § 1331.

## III.
## VENUE

16. Because the acts and omissions forming the basis of this suit occurred in Bexar County, Texas, venue is appropriate in the San Antonio Division of the Western District of Texas.

## IV.
## STATEMENT OF FACTS

17. On or about November 30, 2012, Plaintiff E. Martinez and Superior entered into an Employed Sales Rep and Exclusive Independent Sales Agent Agreement ("Agreement").[9] The Agreement was between Defendants located at 7711 Carondelet Avenue, St. Louis, Missouri 63105 and E. Martinez subject to the governing law of Missouri. The Agreement constitutes a written contract upon which Defendants and E. Martinez engaged in interstate commerce, as defined by the FLSA, and upon which E. Martinez claims coverage under the FLSA.

18. On or about December 1, 2012, Plaintiff Silva and Superior entered into an Employed Sales Rep and Exclusive Independent Sales Agent Agreement.[10] The Agreement was between Defendants located at 7711 Carondelet Avenue, St. Louis, Missouri 63105 and Silva subject to the governing law of Missouri. The Agreement constitutes a written contract upon which Defendants and Silva engaged in interstate commerce, as defined by the FLSA, and upon which Silva claims coverage under the FLSA.

19. On or about December 1, 2012, Plaintiff Olivarez and Superior entered into an

---

[8] See Docket Entry No. 5.
[9] See Exhibit 6, Employed Sales Rep and Exclusive Independent Sales Agent Agreement between E. Martinez and Superior, dated November 30, 2012, which is incorporated by reference into this Complaint as if fully set forth herein.
[10] See Exhibit 7, Employed Sales Rep and Exclusive Independent Sales Agent Agreement between Silva and Superior, dated December 1, 2012, which is incorporated by reference into this Complaint as if fully set forth herein.

Employed Sales Rep and Exclusive Independent Sales Agent Agreement.[11]  The Agreement was between Defendants located at 7711 Carondelet Avenue, St. Louis, Missouri 63105 and Olivarez subject to the governing law of Missouri.  The Agreement constitutes a written contract upon which Defendants and R. Martinez engaged in interstate commerce, as defined by the FLSA, and upon which R. Martinez claims coverage under the FLSA.

20. On or about November 30, 2012, Plaintiff R. Martinez and Superior entered into an Employed Sales Rep and Exclusive Independent Sales Agent Agreement.[12]  The Agreement was between Defendants located at 7711 Carondelet Avenue, St. Louis, Missouri 63105 and R. Martinez subject to the governing law of Missouri.  The Agreement constitutes a written contract upon which Defendants and R. Martinez engaged in interstate commerce, as defined by the FLSA, and upon which R. Martinez claims coverage under the FLSA.

21. On or about November 30, 2012, Plaintiff Trevino and Superior entered into an Employed Sales Rep and Exclusive Independent Sales Agent Agreement.[13]  The Agreement was between Defendants located at 7711 Carondelet Avenue, St. Louis, Missouri 63105 and R. Martinez subject to the governing law of Missouri.  The Agreement constitutes a written contract upon which Defendants and R. Martinez engaged interstate commerce, as defined by the FLSA, and upon which R. Martinez claims coverage under the FLSA.

22. Plaintiffs job duties and responsibilities included, but were not limited to,

---

[11] See Exhibit 8, Employed Sales Rep and Exclusive Independent Sales Agent Agreement between Olivarez and Superior, dated December 1, 2012, which is incorporated by reference into this Complaint as if fully set forth herein.

[12] See Exhibit 9, Employed Sales Rep and Exclusive Independent Sales Agent Agreement between R. Martinez and Superior, dated November 30, 2012, which is incorporated by reference into this Complaint as if fully set forth herein.

[13] See Exhibit 10, Employed Sales Rep and Exclusive Independent Sales Agent Agreement between Trevino and Superior, dated November 30, 2012, which is incorporated by reference into this Complaint as if fully set forth herein.

soliciting Medicare Advantage Plans to the public on behalf of Superior and Centene. Plaintiffs attempted to sell Defendants' wide-ranging Medicare and Medicaid insurance products originating from St. Louis, Missouri to the general public in Texas.

23. By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants, jointly and severally, retained the exclusive right to hire and fire them, the exclusive right to set the rules and regulations of their work, the exclusive right to designate Plaintiffs' supervisors and other individuals to whom they were required to report, the exclusive right to set and, in this case, limit Plaintiffs' ability to influence the enterprise, the exclusive right to wrongly classify Plaintiffs as independent contractors and not employees, and the exclusive right to set and, in this case, deny Plaintiffs' ability to share in Defendants' profits, losses, and liabilities. Defendants, jointly and severally, maintained a common law employer-employee relationship with Plaintiffs.

24. By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants, jointly and severally, limited the initiative and discretion that they could exercise, directed that they work under the close supervision of supervisors, required that they command basic skills set to perform the essential functions of their job duties and responsibilities, furnished equipment such as computers, cell phones, and sales materials to them, directed that they work at offices located at 7990 IH 10 West, Suite 300, San Antonio, Texas 78230, continuously employed them for years at a time, controlled the manner in which they paid Plaintiffs in regular payroll, retained the exclusive authority to terminate them without notice or explanation, retained the exclusive authority to grant or deny Plaintiffs' requests for leave or time off, retained the exclusive authority to define whether Plaintiffs' work was integral to their

enterprise, retained the exclusive authority to grant or deny Plaintiffs retirement benefits, pay their social security taxes, and employee benefits. As a matter of "economic reality," Defendants, jointly and severally, employed Plaintiffs as employees and not independent contractors.

25. Superior, jointly and severally, exercised substantial control over Plaintiffs' job duties and responsibilities including, but limited to, defining the geographic areas in which Plaintiffs could work, defining the targeted customer base, limiting the authority that Plaintiffs could exercise over potential customers, imposing training requirements and service of customers, restricted the use of approved marketing materials, imposing record-keeping responsibilities, requiring minimum insurance coverage, and forced Plaintiffs to provide indemnification.

26. Centene, jointly and severally, exercised substantial control over Plaintiffs' job duties and responsibilities including, but limited to, defining the geographic areas in which Plaintiffs could work, defining the targeted customer base, limiting the authority that Plaintiffs could exercise over potential customers, imposing training requirements and service of customers, restricted the use of approved marketing materials, imposing record-keeping responsibilities, requiring minimum insurance coverage, and forced Plaintiffs to provide indemnification. Defendants exercised the right to control Plaintiffs' conduct in every aspect of their job duties and responsibilities.

27. Although Plaintiffs executed written agreements with Superior, Centene also maintained an employer relationship with Plaintiffs as evidenced by payroll and Internal

Revenue Service records.[14] Centene issued payroll checks made in the name of "Centene Management Company LLC" on behalf of "Centene Corporation" to Plaintiff E. Martinez on September 12, 2010 in the amount of $1,780.00. Centene also issued a Form 1099-MISC made in the name of "Centene Management Company LLC" in 2013 to R. Martinez. Upon information and belief, Centene issued similar payroll and Internal Revenue Service documents to all Plaintiffs, establishing itself as an employer that paid Plaintiffs for work performed. Plaintiffs contend that Centene Management Company LLC, on behalf of Centene, paid wages originating in St. Louis, Missouri to Plaintiffs located in Texas. The wage payments from Centene in Missouri to Plaintiffs in Texas constitute interstate commerce, as defined by the FLSA, and upon which Plaintiffs claim coverage under the FLSA.

28. Defendants, jointly and severally, obligated Plaintiffs to attend mandatory training in various parts of Texas. Defendants, jointly and severally, also obligated Plaintiffs to attend mandatory training requiring out-of-state travel, including travel to Defendants' headquarters located in St. Louis, Missouri. On at least one occasion during their employment with Defendants, Plaintiffs were ordered to travel to St. Louis, Missouri for mandatory job training. The mandatory training conducted in Missouri constitute interstate commerce, as defined by the FLSA, and upon which Plaintiffs claims coverage under the FLSA.

29. Because Plaintiffs' jobs often required that they talk to and meet with customers during and after the regular work day, Plaintiffs frequently worked numerous hours well in excess of forty (40) hours per week.

30. Despite the heavy workload and excessive overtime hours that Plaintiffs worked,

---

[14] See Exhibit 11, Centene Payroll check to E. Martinez, dated September 21, 2010, which is incorporated by reference into this Complaint as if fully set forth herein; See Exhibit 12, Centene Form 1099-MISC to R. Martinez,

Defendants did not keep or maintain any time records, time sheets, punch cards, or other documents verifying the hours Plaintiffs worked.

31.     By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants prohibited Plaintiffs from working for other employers, imposed strict confidentiality upon Plaintiffs regarding their employment terms and conditions, and imposed strict confidentiality on their work product.

32.     By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants treated Plaintiffs as a *de jure* independent contractors.

33.     By and through their Second Amended Original Complaint, Plaintiffs plead that they were, as a matter of "economic reality," *de facto* employees entitled to the protections afforded by the FLSA including minimum and overtime wage compensation.

34.     Upon information and belief, Plaintiffs plead that Defendants maintained an array of benefits available to employees, as that term is defined by ERISA.  These benefits included, but are not limited to, pension, retirement, profit-sharing, and medical and health insurance. Centene provided employees a Summary Plan Description[15] that described retirement benefits and other benefits available upon an employee's death, disability, or termination of employment.[16]  The Summary Plan Description clearly states, "You are eligible to participate in the Plan if you are an Employee."[17]  The Summary Plan Description further states, "You are not eligible to participate if you are an individual who is a signatory to a contract, letter of

---

dated 2013, which is incorporated by reference into this Complaint as if fully set forth herein.

[15] See Exhibit 13, Summary Plan Description, which is incorporated by reference into this Complaint as if fully set forth herein.

[16] See Exhibit 13, Summary Plan Description, which is incorporated by reference into this Complaint as if fully set forth herein.

agreement, or other document that acknowledges your status as an independent contractor not entitled to benefits under the Plan and you are not otherwise classified by the Employer as a common law employee or the Employer does not withhold income taxes, file Form W-2 (or any replacement form, or remit Social Security payments to the Federal government for you, even if you are later adjudicated to be a common law employee."[18]  In 2013, 2014, and 2015, Defendants offered "12 month employees" the option to participate in their health insurance PPO, heath insurance HDHP, dental insurance, vision insurance, supplemental term life insurance, accidental death and dismemberment insurance, and long-term disability insurance plans.[19]  Defendants directly offered retirement and insurance benefits to *employees* and specifically excluded contract employees, such as Plaintiffs.

35.     Defendants held, jointly and severally, fiduciary responsibilities over the aforementioned plans for employees because they, through unknown and yet unnamed administrators, exercised discretionary control or authority over retirement and insurance plan management or assets, held discretionary control or authority for the administration of their plans, or provided investment advice regarding eligibility, benefits, or compensation. Defendants, jointly and severally, by act or omission, acted through plan trustees, plan administrators, and/or members of an investment or insurance committee regarding the aforementioned retirement and insurance plans.

36.     When Plaintiffs signed the Sales Rep and Exclusive Independent Sales Agent

---

[17] See Exhibit 13, Summary Plan Description Section II. Participation, p. 000983, which is incorporated by reference into this Complaint as if fully set forth herein.
[18] See Exhibit 13, Summary Plan Description Section II. Participation, p. 000983, which is incorporated by reference into this Complaint as if fully set forth herein.
[19] See Exhibit 14, Centene Corporation Benefit Costs Sheets, 000153; 000517; 000871 – 000873, which is incorporated by reference into this Complaint as if fully set forth herein.

Agreements, Defendants advised them that they were independent contractors and that they were ineligible for pension, retirement, profit-sharing, and medical and health insurance benefits. Relying on these misrepresentations to their detriment, Plaintiff proceeded to work for Defendants under the false pretense that they were ineligible for these benefits. Consequently, Plaintiffs did not seek or request enrollment in Defendants' pension, retirement, profit-sharing, and medical and health insurance plans. Defendants offered these benefits to other employees, but did not offer them to Plaintiffs.

37. By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants, and their employees, agents, and representatives, intentionally and willfully deprived them of the opportunity to participate in their pension, retirement, profit-sharing, and medical and health insurance plans under ERISA. In the alternative, Plaintiffs plead that Defendants, through act or omission, deprived them of the opportunity to participate in their pension, retirement, profit-sharing, and medical and health insurance plans under ERISA.

38. By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants, and their employees, agents, and representatives, failed to provide them statutory written notice of their rights under COBRA.

V.
- COUNT ONE -
**VIOLATIONS OF THE FAIR LABOR STANDARDS ACT**

39. The FLSA provides, *inter alia*, that all employees are entitled to a minimum wage for the first forty hours worked in a workweek. The FLSA also provides that all employees are entitled to overtime pay, at a rate not less than one-half times the regular rate, for all hours worked in excess of forty hours in a workweek.

40. By and through their Second Amended Original Complaint, Plaintiffs plead that, although Defendants ostensibly contracted with Plaintiffs as "independent contractors," they were, as a matter of "economic reality," *bona fide* employees entitled to the full protections of the FLSA, including overtime compensation for all hours worked more than forty in each workweek. More specifically, Plaintiffs contend that Defendants retained the final authority to hire and fire, that Defendants retained the final authority to supervise and control their work schedules, that Defendants retained the final authority to determine their rates and method of payments, and that Defendants maintained employment records.

41. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants did not employ Plaintiffs in a *bona fide* executive, professional, or administrative capacity.

42. By and through their Second Amended Original Complaint, Plaintiffs contend that they are not otherwise exempt from the FLSA because they were employed as "outside salesmen," or in any other exempt capacity.

43. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants did not pay all regular wages due and owing to Plaintiffs, in violation of the FLSA.

44. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants did not pay all overtime wages due and owing to Plaintiffs, in violation of the FLSA.

45. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants failed to make, keep and preserve records documenting Plaintiffs' hours worked

and wages due.

46.     By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants' failure to pay Plaintiffs was a willful and intentional violation of the FLSA. More specifically, Plaintiffs contend that Defendants failed to act in good faith and did not reasonably believe that Plaintiffs were independent contractor or exempt employees. Plaintiffs further contend that Defendants are, jointly and severally, "repeat offenders" of the FLSA and have a demonstrated pattern and practice of depriving employees of regular and overtime benefits.

47.     By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants' willful and intentional violations constitute "continuing violations" of the FLSA, thereby extending the applicable statute of limitations from two to three years. Further, Plaintiffs invoke all statutory and judicial expansions of the applicable statute of limitations under Ledbetter v. Goodyear Tire & Rubber Co.

48.     By and through their Second Amended Original Complaint, Plaintiffs request that the Court assess liquidated damages in an amount equal to the regular and overtime wages due and owing by Defendants to Plaintiffs because they willfully and intentionally violated the FLSA and are "repeat offenders".

49.     Plaintiffs were compelled to employ the undersigned attorneys to prosecute their claims to judgment. Accordingly, Plaintiffs seek to recover reasonable and necessary attorney's fees and taxable costs of court.

## VI.
## - COUNT TWO -
## VIOLATIONS OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT

50. ERISA protects employees, such as Plaintiffs by, *inter alia*, establishing minimum standards for pension, retirement, profit-sharing, and health insurance plans administered by private employers, such as Defendants. Defendants were under the continuing and present obligation to notify Plaintiffs that they were eligible participants in Defendants' pension, retirement, profit-sharing, and health insurance plans, to provide Plaintiffs with relevant information about the features of such plans, and to assist Plaintiffs in enrolling in such plans so that they could recover such benefits.

51. Defendants were the employers of Plaintiffs because they exercised their "right to control" Plaintiffs under the traditional and common law master-servant relationship. Defendants exercised their right to control Plaintiffs by establishing the skills required, furnishing instrumentalities and tools to perform the work requested, defining the location where the work was to be performed, setting the duration of the employer-employee relationship, retaining the right to assign additional job duties and responsibilities, exercising control over the work day, defining the method and frequency of payment, retaining the power to hire and fire, and providing employee benefits.

52. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants had actual and/or constructive knowledge that they intentionally misclassified Plaintiffs as "independent contractors" when, in fact, Plaintiffs were employees. Further, Plaintiffs contend that Defendants failed to conduct a reasonably prudent or diligent investigation into their status as employees and, in doing so, failed or refused to extend all available ERISA

eligibility and benefits to Plaintiffs.

53. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants as *fiduciaries*, and those presently unknown and unnamed fiduciaries acting in concert with Defendants and who exercised discretionary control over the operation or administration of Defendants' ERISA plans breached their fiduciary duties to Plaintiffs. Defendants, as joint and several fiduciaries, held the primary responsibility to operate and manage their retirement and insurance plans solely in the interest of participants and beneficiaries and for the exclusive purpose of providing benefits and paying plan expenses. Defendants, jointly and severally, were obligated to act prudently, to avoid conflicts of interests, and to avoid transactions that prejudiced employees and potential participants such as Plaintiffs while enriching themselves.  More specifically, Defendants knowingly or recklessly made materially false, misleading and fraudulent statements and representations to Plaintiffs about their status as employees and their eligibility for all plan benefits offered by Defendants.  In making such materially false, misleading and fraudulent statements, Defendants breached their fiduciary duty to Plaintiffs, breached their duty of loyalty to Plaintiffs, and engaged in self-dealing by prioritizing their financial and economic interests above all.  As a direct and proximate result of Defendants' willful and intentional actions, Plaintiffs suffered significant financial losses and harms.

54. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants as *fiduciaries*, and those presently unknown and unnamed co-actors and co-conspirators, such as plan advisors or other similarly situated third-parties, assisted fiduciaries, such as Defendants, to breach their fiduciary duties to Plaintiffs.  More specifically, Defendants

breached their fiduciary duties to Plaintiffs, the Defendants had actual or constructive knowledge that the activity of the fiduciary was improper, and the Plaintiffs suffered significant financial losses and harms.

55. By and through their Second Amended Original Complaint, Plaintiffs contend that Defendants, and those presently unknown and unnamed co-actors and co-conspirators, such as plan advisors or other similarly situated third-parties, assisted fiduciaries, such as Defendants, to interfere with Plaintiffs' attainment of rights provided under ERISA. More specifically, Defendants interfered with Plaintiffs' right to enroll and participate in Defendants' pension, retirement, profit-sharing, and health insurance plans and terminated Plaintiffs to prevent them from acquiring pension, retirement, profit-sharing, and health insurance plan benefits. As a direct and proximate result of Defendants' willful and intentional actions, Plaintiffs suffered significant financial losses and harms.

56. By and through their Second Amended Original Complaint, Plaintiffs assert common law ERISA claims against all Defendants for restitution, indemnification and contribution, and estoppel in favor of Plaintiffs to enforce benefits.

57. Plaintiffs were compelled to employ the undersigned attorneys to prosecute their claims to judgment. Accordingly, Plaintiffs seek to recover reasonable and necessary attorney's fees and taxable costs of court.

## VII.
## - COUNT THREE -
## VIOLATIONS OF THE CONSOLIDATED
## OMNIBUS BUDGET RECONCILIATION ACT

58. COBRA imposes obligations on employers to, *inter alia*, provide notice to plan administrators of all qualifying events affecting participants in group health plans, such as

Plaintiffs. As employees, Plaintiffs would have been qualified beneficiaries for COBRA continuation coverage. Defendants were under the continuing and present obligation to notify their plan administrators that it had terminated Plaintiffs.

59. By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants and their plan administrators failed to provide them notice of their COBRA rights upon termination of employment. As such, Defendants and their plan administrators deprived Plaintiffs of their right to exercise any benefits available to them, such as the right to continuation coverage under the COBRA election period.

60. By and through their Second Amended Original Complaint, Plaintiffs plead that Defendants actions were willful and rose to the level of gross misconduct.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS EUGENE MARTINEZ, DAVID SILVA, MARIO OLIVAREZ, RUBY MARTINEZ, and SYLVIA TREVINO, pray that, upon final trial on the merits, they recover judgment against DEFENDANTS SUPERIOR HEALTHPLAN, INC. and CENTENE CORPORATION, said judgment entitling Plaintiffs to:

1. Compensation for all damages suffered by Plaintiffs, including, but not limited to, unpaid regular and overtime wages, and other compensation to be determined upon inquest;

2. Statutory remedies available under the FLSA, ERISA, and COBRA;

3. Fringe benefits including, but not limited to, pension and retirement benefits, stock options, savings plans, cafeteria plan benefits, profit-sharing benefits, and medical and life insurance benefits.

4. Equitable remedies including, but not limited to estoppel, restitution, the imposition of constructive trusts, disgorgement of ill-gotten gains, and all available injunctive relief;

5. Liquidated damages to be determined upon inquest;

6. Excise taxes and penalties provided under COBRA;

7. Punitive, exemplary and surcharge damages;

8. Reasonable and necessary attorney's fees;

9. Taxable costs of court;

10. Pre-judgment and post-judgment interest at the maximum rate permitted by law;

11. All taxable costs of court expended in this lawsuit; and

12. Such other and further relief, either at law or equity, to which Plaintiffs may be justly entitled.

PLAINTIFFS HEREBY REQUEST TRIAL BY JURY.

    Respectfully submitted,

    SÁNCHEZ & WILSON, P.L.L.C.
    MARK ANTHONY SÁNCHEZ, ESQ.
    6243 IH 10 West, Suite 1025
    San Antonio, Texas 78201
    (210) 222-8899
    (210) 222-9526 (Telecopier)
    ATTORNEYS FOR PLAINTIFFS

    By: /s/ Mark Anthony Sánchez
        MARK ANTHONY SÁNCHEZ, ESQ.
        TEXAS STATE BAR NO. 00795857

And

    LAW OFFICE OF ARIC J. GARZA, PLLC
    ARIC J. GARZA, ESQ.
    1115 East Travis Street, Suite 1039
    San Antonio, Texas 78205
    (210) 225-2961
    (210) 225-2962 (Telecopier)
    ATTORNEYS FOR PLAINTIFFS

    By: /s/ Aric J. Garza
        ARIC J. GARZA, ESQ.
        TEXAS STATE BAR NO. 50511848

CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing Plaintiffs' Second Amended Original Complaint has been delivered *via* E-File Notification on this the 24th day of October, 2017 to G. Mark Jodon, Esq, Littler Mendelson, P.C., 1301 McKinney Street, Suite 1900, Houston, Texas 77010.

/s/ Mark Anthony Sánchez
MARK ANTHONY SANCHEZ, ESQ.

NOTICE OF ELECTRONIC FILING

The undersigned counsel hereby certifies that he has electronically submitted for filing a true and correct copy of the above and foregoing in accordance with the Electronic Case Files System of the Western District of Texas on the 24th day of October 2017.

/s/ Mark Anthony Sánchez
MARK ANTHONY SANCHEZ, ESQ.